**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Lisa J. Rodriguez, Esq.
Donna Siegel Moffa, Esq.
8 Kings Highway West
Haddonfield, NJ 08033
Telephone: 856-795-9002
Facsimile: 856-795-9887

**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
Joseph H. Meltzer, Esq.
Edward W. Ciolko, Esq.
Katherine B. Bornstein, Esq.
Robert J. Gray, Esq.
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
Facsimile: 610-667-7056

**Attorneys for Plaintiff and the Class**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATT LONG on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MENU FOODS INCOME FUND; MENU FOODS LIMITED; MENU FOODS HOLDINGS, INC.; MENU FOODS INC.; AND MENU FOODS MIDWEST CORPORATION; CHEMNUTRA, INC.,<br><br>Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL REQUESTED |

1

Matt Long, ("Plaintiff"), on behalf of himself and all others similarly situated, alleges as follows:

## INTRODUCTION

1. Plaintiff brings this class action on behalf of himself and a class of consumers and/or entities similarly situated who purchased brands of pet food manufactured and/or distributed by Menu Foods Income Fund, Menu Foods Limited, Menu Foods Holdings, Inc., Menu Foods, Inc. and/or Menu Foods Midwest Corporation (collectively "Menu Foods" and/or the "Company") and contained ingredients supplied by ChemNutra (collectively, the "Defendants") to seek redress for the harms to Plaintiff pet owners and a class of consumer pet owners he seeks to represent whose pets were harmed by defective pet food manufactured by Defendants.

2. Defendant Menu Foods knowingly and intentionally sold pet food manufactured at their Emporia, Kansas and Pennsauken, New Jersey plants that has caused, *inter alia*, acute renal failure in dogs and cats. Defendant Menu Foods initially admitted that the pet food manufactured at these plants between December 3, 2006 and March 6, 2007 (the "Defective Product(s)")[1] is defective. Menu Foods has subsequently expanded that period to include products manufactured between November 8, 2006 and March 6, 2007. Menu Foods was aware of the possibility of such harm at least as early as February 20, 2007, yet did not issue a

---

[1] For purposes of this complaint, the defined term "Defective Products" shall also include all of the ingredients included in the manufacture of the product, including wheat gluten.

statement announcing a recall to the public until nearly a month later, on March 16, 2007. In the period between first learning of the health risks associated with the Defective Products and announcing their recall, Menu Foods conducted its own tests on the food. Published reports indicate that as many as one in six animals died in these tests. Due to Defendants' delay in notifying the public of the risks associated with the Defective Products, thousands of animals have been sickened, some resulting in death.

3. Defendant ChemNutra supplies Menu Foods with ingredients, including wheat gluten, that are incorporated into the manufacturing of Menu Foods pet food products.

4. Defendant Menu Foods is the leading North American private label and/or contract manufacturer of wet pet food products, selling over ninety (90) brands of pet food for cats and dogs, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains such as Wal Mart, Giant Food, Wegmans, Safeway and PetSmart. On March 16, 2007, Menu Foods Income Fund issued a press release announcing the recall of sixty million cans of contaminated dog and cat food manufactured between December 3, 2006 and March 6, 2007 at two of the Company's manufacturing plants located in Emporia, Kansas and Pennsauken, New Jersey. On April 5, 2007 Menu Foods expanded the recall to include products made between November 8, 2007 and March 6, 2007, and included more varieties of food products. The recall covers the "cuts and gravy" style pet foods sold in cans and pouches.

5. On April 3, 2007 Defendant ChemNutra announced a recall of all its wheat gluten imported from one its Chinese suppliers.

6. Defendant Menu Foods designed, manufactured, marketed and warranted their pet food products to Plaintiff and the Class (as defined herein). In marketing their products to

consumers, Defendant Menu Foods warranted that their products were fit for consumption by household pets, and free from defects.

7.  Defendant ChemNutra warranted that it supplied high quality wheat gluten ingredients for use in feed products.

8.  The recalled pet food that Plaintiff and members of the Class purchased and fed to their pets caused their pets to become ill, requiring, *inter alia*, veterinarian visits, medications, hospitalizations and, in some cases, burials of those pets that died due to renal failure caused by the contaminated pet food. Many of the pets that consumed the Defective Products and have not died now require future medical monitoring of their health to evaluate the extent of the damage to their kidneys. As a direct result of their purchase of the Defective Products, Plaintiff and members of the Class have suffered damages and incurred substantial costs associated with the health effects upon their pets from consuming the Defective Products.

9.  Plaintiff brings this suit pursuant to Federal Rule of Procedure 23 on behalf of a class of similarly situated persons composed of:

> All persons in the United States who purchased and/or incurred damages from pet food produced, manufactured and/or distributed by Menu Foods (the "Class") during the period November 8, 2006 to March 6, 2007.[2]

10. Plaintiff brings this suit on behalf of himself and the Class against Defendants for manufacturing, distributing and offering for sale the Defective Products, thereby causing Plaintiff and the members of the Class to incur substantial damages.

---

[2] Plaintiff reserves the right to expand this Class definition if subsequent information is discovered evidencing additional contaminated food manufactured outside the time period November 8, 2006 to March 6, 2007.

11. Plaintiff brings this action under theories of strict liability, negligence, breach of express and implied warranties, fraud and misrepresentation pursuant to the common law of New Jersey, N.J.S.A. 2A:58-C *et seq.* (1987 Products Liability Act), and the New Jersey Consumer Fraud Act, N.J. Stat § 56:8-1 *et seq.* arising out the consumption of the Defective Products by Plaintiff's pet cat.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005, Publ. L. 109-2 (Feb. 18, 2005). This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and the Defendants are subject to personal jurisdiction in this district.

## PARTIES

14. Plaintiff Matt Long is a resident of Reading, Pennsylvania. Plaintiff purchased the recalled Science Diet Feline Savory Cuts ("Science Diet") brand of cat food during the period the Defective Products were manufactured, and fed it to his cat, who subsequently died from kidney failure as a result of consuming Defendants' Defective Product.

15. Defendant Menu Foods Income Fund is a limited purpose trust established under the laws of the Province of Ontario, Canada. Menu Foods Income Fund maintains its principal offices at 8 Falconer Drive, Streetsville, Ontario, Canada. Menu Foods Income Fund holds the majority of the partnership units of Menu Foods Limited.

16. Defendant Menu Foods Limited is Canadian corporation located at 8 Falconer Drive, Streetsville, Ontario, Canada. Menu Foods Limited operates throughout the United

States, including the State of New Jersey, through the manufacture and sale of wet pet food products to retail customers and brand owners.

17. Defendant Menu Foods Holdings, Inc. is a Delaware corporation affiliated with the other Defendants that may be served through its registered agent, the Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

18. Defendant Menu Foods, Inc. is a New Jersey corporation with its principal headquarters located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110. On information and belief, Menu Foods, Inc. is a subsidiary of Menu Foods Holdings, Inc.

19. Defendant Menu Foods Midwest Corporation is a Delaware corporation with its principal headquarters located at P.O. Box 1046, 1400 East Logan Avenue, Emporia, Kansas 66801. On information and belief, Menu Foods Midwest Corporation is a subsidiary of Menu Foods Holdings, Inc.

20. Defendant ChemNutra, Inc. is Nevada corporation with its principal headquarters located at 810 S. Durango Drive, Suite 102, Las Vegas, NV 89145. ChemNutra specializes in importing various ingredients, including wheat gluten, that are incorporated in feed products. ChemNutra supplied Menu Foods with the wheat gluten utilized in the manufacturing of the Defective Products.

## FACTUAL ALLEGATIONS

21. Plaintiff and the other similarly situated members of the Class are pet owners who suffered damages from the purchase and/or consumption by their pets of the Defective Products.

22. Menu Foods purports to be the leading North American private label/contract manufacturer of wet pet food products under various brands or labels sold by supermarket retailers, pet specialty retailers and other retail and wholesale outlets. Menu Foods

manufactures, produces, distributes and markets over ninety (90) brands of pet food products accounting for over a billion containers of pet food in 2006 alone.

23. On or about February 20, 2007, Menu Foods received the first of several consumer complaints from concerned pet owners regarding the Defective Products.

24. Pet owners reported dogs and cats becoming severely ill, even dying, as a result of consuming Menu Foods' "cuts and gravy" style pet food products manufactured at either their Emporia, Kansas or Pennsauken, New Jersey manufacturing facilities.

25. Despite receiving multiple complaints concerning its pet food products, Menu Foods waited a week to begin testing the safety of its pet food products. On or about February 27, 2007 Menu Foods performed tests of its pet food products on approximately fifty dogs and cats. According to the federal Food and Drug Administration, approximately nine animals (or about one in six tested) died during the course of these tests. The cause of death of these animals was kidney failure, the same diagnosis as Plaintiff's pet cat.

26. Despite the numerous complaints from concerned pet owners regarding health problems incurred by their pets, and confirmation of these concerns through their own in-house testing, Menu Foods waited almost a month until March 16, 2007 to publicly announce a recall of approximately forty-two (42) brands of "cuts and gravy" style pet food produced between December 3, 2006 and March 6, 2007. The initial recall was subsequently expanded to include a larger number of varieties of the "cuts and gravy" style pet food and included products that were produced as far back as November 8, 2006.

27. While Menu Foods delayed warning pet owners nationwide about the dangers of consuming the Defective Products, and continued to sell and profit from the Defective Products, thousands of pets, including Plaintiff's cat, were harmed by consuming the Defective Products.

28.     To date, Menu Foods have confirmed approximately fifteen deaths resulting from the consumption of the Defective Products. However, as the death of Plaintiff's cat indicates, the unconfirmed death total is likely much higher, and, according to various veterinary professionals, will continue to climb. *See, e.g.,* ABCNews.com, *Doctors Caution Thousands More Pet Deaths*, (March 30, 2007) available at http://abcnews.go.com/WNT/story?id=2974319. In addition to the anticipated increase in the number of reported deaths resulting from consumption of the Defective Products, multiple health agencies predict that thousands of pets are/will fall ill, and necessitate treatment from veterinary professionals.

29.     Defendants, directly or indirectly, have implicitly and explicitly represented that their products are fit for consumption by pets, and will not result in serious illness and/or death after consumption. Further, Defendants have also made representations concerning the quality of its products on product labeling and in marketing materials concerning the quality of their food products. These representations implicitly represent that the food is fit for consumption by animals.

30.     Subsequent to Menu Foods' recall of the Defective Products, scientists at the New York State Food Laboratory identified a rat poison drug called aminopterin in the Defective Products as the likely culprit for the illnesses. Subsequent to the findings of the New York State Food Laboratory, the federal Food and Drug Administration announced that it found the substance melamine, a substance used to produce plastic kitchen wares, in samples of the Defective Products. The substance melamine has been traced to wheat gluten incorporated in the manufacturing of the Defective Products. Neither aminopterin nor melamine are proper or necessary ingredients in pet food and should not be in Menu Foods' pet food products.

31. Defendant ChemNutra is the supplier of Menu Foods' wheat gluten. Subsequent to the recall issued by Menu Foods, ChemNutra issued its own recall of its wheat gluten product on April 3, 2007.

32. As noted above, despite having knowledge of complaints concerning the quality of its food products, Menu Foods waited almost a month before notifying the public of the potential illnesses which animals could suffer after consuming the Defective Products. As a result of Defendants' negligence and delay in notifying the public of the dangers of the Defective Products, Plaintiff, after purchasing and utilizing the Defective Product, suffered damages and lost his cat.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following persons similarly situated (the "Class"):

> All persons in the United States who purchased and/or incurred damages from pet food produced, manufactured and/or distributed by Menu Foods during the period November 8, 2006 to March 6, 2007.

34. The members of the foregoing defined Class are so numerous that joinder of all members is impracticable. While the exact number of the members of the Class is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are, at minimum, thousands of individuals in the Class.[3]

35. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced and competent in national, sophisticated class action

---

[3] The FDA has reported that it has received over ten thousand (10,000) complaints from pet owners.

litigation. Plaintiff has no interests that are contrary to, or in conflict with, those of the members of the Class.

36. A class action suit, such as the instant one, is superior to other available means for the fair and efficient adjudication of this lawsuit. The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

37. A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy. Absent these actions, the members of the Class likely will not obtain redress of their injuries and Defendants will retain the proceeds of their unlawful actions.

38. Furthermore, even if every member of the Class could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system. Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Class and provide for judicial consistency.

39. There is a well-defined community of interests in the questions of law and fact affecting the Class as a whole. The questions of law and fact common to each of the Class members predominate over any questions affecting solely individual members of the action. Among the common questions of law and fact are:

    a. Whether Defendants manufactured and/or sold the Defective Products that were subject to a national recall;

  b. Whether Defendants implicitly and/or explicitly represented that the Defective Products were fit for consumption by the pets of Plaintiff and the members of the Class;

  c. Whether Defendants' representations, omissions and conduct regarding the Defective Products was false and/or misleading;

  d. Whether Defendants intentionally, recklessly or negligently manufactured and distributed products which contained substances harmful to the pets of Plaintiff and the Class members;

  e. Whether Defendants foresaw or could have foreseen that Plaintiff and the Class members would purchase the Defective Products and feed it to their pets;

  f. Whether Defendants intentionally, recklessly or negligently delayed in notifying the public of the potential harm that could arise after consuming the Defective Products;

  g. Whether the harm caused by Defendants' Defective Products constitutes a manufacturing or design defect;

  h. Whether Defendants' manufacturing and distribution of the Defective Products constitutes a breach of any implied or express warranty;

  i. Whether Plaintiff and the Class members suffered injury, loss or damages from using the Defective Products, directly or indirectly and, if so, what is the proper measure of loss and damage; and

  j. Whether Defendants' negligence in manufacturing and distributing the Defective Products is/was the proximate cause loss, injury or damages to Plaintiff and the Class Members.

40. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance as a class action.

## COUNT ONE

### Breach of Express Warranty
### (Against Defendant Menu Foods)

41. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

42. At all relevant times prior to the public recall, Menu Foods expressly warranted that the Defective Products were safe for consumption by pets owned by Plaintiff and the members of the Class.

43. As evidenced by the illnesses suffered by the pets who consumed the Defective Products, they were not safe for consumption and did not satisfy Menu Foods' express representations regarding the quality of the Defective Products.

44. Plaintiff and the Class members relied on Menu Foods' express representations in purchasing and feeding the Defective Products to their pets.

45. As a direct and proximate result of Menu Foods' breach of said warranties, and other wrongdoing as detailed herein, Plaintiff and the members of the Class suffered damages.

## COUNT TWO

### Breach of Implied Warranty
### (Against Defendant Menu Foods)

46. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

47. At all relevant times Menu Foods was a merchant as defined in sections 2-104 and 2-314 of the Uniform Commercial Code ("UCC").

48. Menu Foods manufactured, marketed, sold and distributed the Defective Products.

49. Through their marketing, advertising, promoting and labeling of their "cuts and gravy" style pet food, Menu Foods impliedly warranted that the Defective Products were fit for the ordinary purpose for which they were intended, that is, for safe consumption by pets without the risk of suffering negative health effects, including death, pursuant to section 2-314 of the UCC.

50. As a direct and proximate result of Menu Foods' breach of said warranties, and other wrongdoing as detailed herein, Plaintiff and the members of the Class suffered damages.

## COUNT THREE

### Negligence
### (Against All Defendants)

51. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

52. Defendants owed Plaintiff and the members of the Class a duty to ensure that the products manufactured and sold by Defendants, including the Defective Products, were safe for consumption and free from contamination.

53. Defendants breached said duty by failing to exercise due care in manufacturing, producing, selling and ensuring the safety of the Defective Products.

54. Defendants further breached said duty by failing to implement sufficient quality control procedures and testing of the Defective Products prior to introducing them into the stream of commerce for purchase by Plaintiff and the members of the Class.

55. Defendants knew, or in the exercise of reasonable care should have known, that the Defective Products presented an unacceptable risk of illness to the pets of Plaintiff and the members of the Class.

56. Defendants knew, or in the exercise of reasonable care should have known, that the unacceptable risk associated with the Defective Products, as detailed herein, would result in foreseeable and avoidable losses and damages.

57. As a direct and proximate result of Defendants' negligence, Plaintiff and the members of the Class have suffered damages, and continue to suffer damages.

## COUNT FOUR

### Strict Product Liability
### (Against All Defendants)

58. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

59. As stated above, Defendants are producers, manufacturers and/or distributors of the Defective Products.

60. The Defective Products produced, manufactured and/or distributed by Defendants were defective in design or formulation in that, upon leaving the control of Defendants, the foreseeable risks associated with the Defective Products exceeded the benefits associated with the design or formulation.

61. Upon leaving the control of Defendants, the Defective Products reached Plaintiff and the members of the Class without substantial change in condition.

62. Further, the Defective Products produced, manufactured and/or distributed by Defendants were defective due to inadequate warning and/or testing of ingredients prior to entering the stream of commerce.

63. The Defective Products produced, manufactured and/or distributed by Defendants were therefore defective due to (1) defective production and/or manufacturing and (2) inadequate warning, because upon confirming the risk of serious illness and/or death from the consumption

of the Defective Products, Defendants failed to immediately provide adequate warnings to Plaintiff and the Class members.

64.   As a direct and proximate result of the defective condition of the Defective Products as produced, manufactured and/or distributed by Defendants, Plaintiff and the members of the Class suffered damages.

## COUNT FIVE

### Unjust Enrichment
### (Against All Defendants)

65.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

66.   As detailed herein, Plaintiff and the members of the Class have suffered damages that were a direct, proximate and foreseeable result of Defendants' negligence and otherwise wrongful conduct associated with the Defective Products.

67.   Defendants have profited and benefited from the sale of the Defective Products.

68.   Defendants have retained these profits and benefits with the knowledge that Plaintiff and the members of the Class did not receive products that were represented to be safe and healthy for their pets.

69.   Defendants have thus received profits and benefits that they have unjustly retained at the expense of Plaintiff and the members of the Class.

70.   As a direct and proximate result of Defendants' unlawful acts and conduct as detailed herein, Plaintiff and the members of the Class have been deprived of the use of their monies that have unjustly enriched Defendants, and are therefore entitled to restoration of their monies.

## COUNT SIX

**Violations of Consumer Fraud Act (N.J.S.A. § 56:8-1 *et seq.*)**
**(Against All Defendants)**

71. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

72. Defendants are the researchers, developers, testers, manufacturers, inspectors, marketers, promoters, distributors, and/or sellers of the Defective Products which were released into the stream of commerce.

73. As detailed herein, Defendants knew or should have known that the use of the Defective Products would cause serious injuries to the pets of Plaintiff and the Class Members, but failed to issue proper warnings of such dangers.

74. Defendants' continued practice of promoting and marketing the Defected Products, even after receiving numerous complaints from consumers, fraudulently mislead Plaintiff and the members of the Class as to the safety of the Defective Products.

75. Defendants intentionally encouraged consumers, including Plaintiff and the Class members, to continue purchasing the Defective Products for a longer period of time than Defendants knew or should have known was safe and effective.

76. As such, Defendants made untrue, deceptive or misleading representations of material facts, and omitted and/or concealed material facts from Plaintiff and the members of the Class in violation of the New Jersey Consumer Fraud Act.

77. Defendants knew or should have known that Plaintiff and members of the Class would rely on Defendants' statements or omissions.

78.     Defendants' acts of manufacturing, distributing and/or marketing the Defective Products lacked good faith and fair dealing, so as to constitute an unconscionable commercial practice, in violation of the New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 *et seq.*

79.     As a direct and proximate result of Defendants' acts of consumer fraud as detailed herein, Plaintiff and the members of the Class have purchased unsafe products and incurred monetary damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

A.      An order certifying the Class under the appropriate provisions of Fed. R. Civ. P. 23, and appointing Plaintiff and his counsel as representatives of the Class;

B.      An Order awarding damages in favor of Plaintiff and the members of the Class for all actual and consequential damages, including but not limited to: (i) all costs incurred in diagnosing and treating their pets; (ii) all costs incurred in euthanizing their pets; and (iii) all costs incurred in replacing the Defective Products;

C.      Imposition of a Constructive Trust on any amount by which Defendant was unjustly enriched at the expense of the Class as the result of the actions described above;

D.      An Order enjoining Defendant from engaging in the unlawful conduct and practices detailed herein;

E.      An Order establishing a fund for the future medical monitoring of Class members' to diagnosis and treat the illnesses suffered by these pets from consuming the Defective Products;

F.      Prejudgment and post-judgment interest to Plaintiff and the Class;

G.      An Order awarding attorneys' fees and costs;

  H. An Order for equitable restitution of all profits unjustly retained by Defendants; and

  I. For all other relief as the Court deems just.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

April 6, 2007

        **TRUJILLO RODRIGUEZ & RICHARDS, LLC**

        By: s/Donna Siegel Moffa
           Lisa J. Rodriguez, Esq.
           Donna Siegel Moffa, Esq.
           8 Kings Highway West
           Haddonfield, NJ 08033
           Telephone: 856-795-9002
           Facsimile: 856-795-9887

           **SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
           Joseph H. Meltzer
           Edward W. Ciolko
           Katherine B. Bornstein
           Robert J. Gray
           280 King of Prussia Road
           Radnor, PA 19087
           Telephone: 610-667-7706
           Facsimile: 610-667-7056

           *Counsel for Plaintiff*